Bartlett v. Bartlett.

---

HENRY BARTLETT, PLAINTIFF AND APPELLEE, V. EDWARD BARTLETT AND OTHERS, DEFENDANTS AND APPELLANTS.

1. **Witness:** INCOMPETENCY MAY BE WAIVED. While a party to an action is an incompetent witness when the adverse party is the representative of a deceased person, yet the benefit of the statute may be waived by the party for whose benefit the statute is made, and the witness then becomes competent to testify.

2. ———: PRESUMPTION. When the testimony of an incompetent witness is certified to this court the same as any other witness who testified on the trial, and the record shows no objection made on the trial to the testimony of the witness, the presumption follows that the objection was waived.

3. **Equity Title to Real Property:** HUSBAND AND WIFE. When the husband causes his real estate to be conveyed to his

38

wife with the understanding between them, definitely stated, that she will hold the title for him and convey the property to anyone to whom he may sell, or in case he does not sell then to him, a court of equity will enforce the trust upon the death of the wife and compel her heirs to execute it.

REHEARING of case reported 13 Neb., 456.

*O. H. Scott* and *A. R. Scott*, for appellants.

*Colby & Hazlett* (*O. P. Mason* with them), for appellee.

REESE, J.

This cause was decided at the July term, 1882, of this court, and may be found reported at page 456 of the 13th Neb. Reports. After that decision was announced, a motion for a rehearing was made and sustained and a reargument ordered. The cause was reargued and submitted on the twenty-sixth day of July, 1883, and upon a review of the case the then chief justice, LAKE, and Judge MAXWELL adopted the view which was against the decision on the former hearing. The present chief justice, COBB, who wrote the opinion as reported in 13 Neb., being unable to agree with the majority, the record was placed in the hands of the then chief justice to write the opinion. Probably from a want of sufficient time in which to do so, the record was returned with the opinion unwritten. Chief Justice COBB and Judge MAXWELL being still unable to agree, it devolves upon the writer to examine the case, and from the records and briefs alone, unaided by either of the arguments which have been made, decide it.

The only question as to the soundness of that decision is, whether or not the court was laboring under a mistake as to the facts of the case as shown by the testimony introduced on the trial.

As to the statements of the law contained in that decision and the opinion of the court, we have only to say that

we fully agree with them and have no disposition here to question them.

Starting out then with the presumption of a resulting trust, rebutted by the relation existing between the plaintiff and the deceased, his wife, our whole inquiry will be directed toward the proper solution of the question, Does the proof overcome the presumption that the conveyances were intended as an advancement to her?

It is conceded that if objection is made at the proper time the plaintiff was an incompetent witness under the provisions of the law in force at the time of the trial. But that question is not before us. The benefit of the statute can be waived, and in that event the witness becomes competent. The deposition of the plaintiff appears in this record. It is included in the bill of exceptions the same as the testimony of all the other witnesses, and is certified to by the judge who heard the cause. The bill was served upon the appellee, and no amendments are suggested. It was prepared, evidently, under the direction of the appellant, and there is no record of any objection being made to it on the trial, and the appellants quote from it in their brief. The presumption must be that objection to it was waived and that it was read on the trial.

No testimony was introduced on the trial by any of the defendants, the cause being submitted upon the evidence introduced by the plaintiff. While we have given this testimony a careful and critical examination, yet we shall state the conclusions drawn therefrom by us rather than to any great extent quote the testimony of the witnesses.

The plaintiff and the deceased had been married about twenty-eight years. At the time of their marriage the plaintiff had some means. The deceased had none. Their property was acquired by the joint labors of both, the deceased never having received anything excepting from her husband, the plaintiff. They acquired property of considerable value, and had no children, and at the time of the

death of the wife of the plaintiff she had neither father, mother, nor child living. If it is shown by the testimony that it was not the intention of either of the parties that the conveyances to the wife were advances to her, but that it was understood by both that she was holding the property in trust for the plaintiff, to be deeded to him or to any other person whom he might direct, at his pleasure, then the presumption in favor of the defense is overcome, and the decree of the district court must stand.

On the trial of the cause the court found, "That the plaintiff, Henry Bartlett, purchased all of the above described real estate for himself, and that the same was paid for by plaintiff out of his own property, and the naked legal title only to the same was placed in Elizabeth Bartlett, deceased, to hold in trust for the use and benefit of the plaintiff, Henry Bartlett."

It is conceded by all, and is unquestionably true, that all the real estate, the title to which was held by Mrs. Bartlett at the time of her death, was purchased by the plaintiff and with his own means. And we think it is just as true that it was the understanding of the deceased during her lifetime that she held the title in trust to be conveyed to any person to whom the plaintiff might sell, or in case he did not sell then to him. One witness, Martha Bartlett, testified that the deceased told her "she was only holding the property for a time, and she should deed it back to Henry Bartlett, the plaintiff, or anyone Mr. Bartlett should sell to." Another one, Mrs. Titus, testified that she was on very familiar relations with the family, and that at one time she was jesting with the deceased about an affliction from which the plaintiff was suffering. The witness says: "I said that if Mr. Bartlett should die it would leave the property in good shape and she would not have to go into court with it. Mrs. Bartlett said it would not make any difference, that if Henry Bartlett should not live why she would not have the trouble to deed it back to him when

they got settled with Capt. Hill, and I would go right
straight and deed it to our Edward, and would live with
him.   We had another conversation afterwards about some
other land which had been deeded to her, and she said she
would deed it to him or anyone else that Mr. Bartlett
wanted her to.   She said she did not want the property in
her name, and that she had a great deal rather Mr. Bart-
lett had deeded it to Edward instead of her, for fear some
one would think they were trying to rob some one.   While
she was sick in bed I went down to see her.   She had been
sick only a day or two.   I asked her how she was, and she
said she thought she felt some better, but Mr. Bartlett had
gone after a girl.   She said she thought she had typhoid
fever.   She says, if the doctor says it is the typhoid fever
I wish you would speak to Henry Bartlett when he gets
back, and have him get the property fixed up, as it might
cause him some trouble if anything should happen."

These declarations were made by her while she was the
holder of the title, in disparagement thereof, and were she
living they would be competent evidence against her.   They
are none the less so now.   *Scarven v. Scarven,* 1 N. C. C.,
65.   *Jeans v. Cook,* 24 Beaver, 513.   *Sidmouth v. Sid-
mouth,* 2 Beav., 447. · *Pole v. Pole,* 1 Ves. Sr., 76.   *Mur-
less v. Franklin,* 1 Swanst., 13.   *Willard v. Willard,* 56
Penn. St., 119.

The plaintiff testified that he caused the lands to be
deeded to the deceased to hold just for a time until he got
ready to trade them off, as he had done before; that he
told her he was going to have some lands deeded to her at
two different times, and she said she did not want to be
bothered with any lands in her name, and asked him to deed
them to his son; that he told her he would not do so, for
the reason that the son lived some distance away, and if he
traded land he did not want to lose the time by going after
him to make the deed.   He also testified that he had been
somewhat accustomed to have the title to his land held in

her name, and he had had other tracts of land held by her in this way, and that none of them were deeded to her as an advancement, but to hold just for a time until he got ready to trade them off. Also, the persons from whom the lands were purchased testified that they were bought by the plaintiff with his money, and at his request deeded to the deceased; some of them testifying that at the time he procured the deeds to be made to his wife he stated that she would deed it to anyone whom he wished. That it was so understood by both parties is shown by their conduct at the time of the purchase, and by the conduct and declarations of both plaintiff and deceased, and by every circumstance in connection with the matter.

The remaining question requiring attention is, whether or not the plaintiff is in a position to assert his equities in this proceeding, as it is a familiar rule that a person can invoke the aid of a court of equity successfully, only, when he is free from wrong himself. Seizing upon this rule of equity, the defendants insist that the purpose of the plaintiff in procuring the deeds to be made to the deceased was a fraudulent one; that at said time he was indebted to one John E. Hill, and his purpose was to hinder, delay, and defraud the said Hill. On the trial of the cause in the court below, certain questions were propounded to the court by the defendants, touching this branch of the case, which questions and the answers thereto were as follows:

"1st. Does the testimony show that the title to the real estate in controversy was placed in the name of Mrs. Elizabeth Bartlett, deceased, wife of said plaintiff, on account of some financial troubles then existing between said plaintiff and one J. E. Hill?

"Ans. On account of an unsettled partnership account between the parties, but does not show the title was placed in Elizabeth Bartlett to hinder such settlement, nor to defraud, hinder, or delay the said Hill in the collection of his claim."

"2d.   Does the testimony show that John E. Hill afterwards obtained a judgment or an award against said plaintiff which grew out of the financial trouble then existing, and if so what was the amount of said judgment or award?

"Ans.   Yes, $1,493.42, and shows the same was paid in full without any attempt to delay said Hill in the collection of said award."

These findings are supported by the testimony, as is also the further fact that at all times during the time the title to these lands were held by the deceased the plaintiff was in the possession of property, held in his own name, of much greater value than would have been required to satisfy the claim of Hill.   The plaintiff testifies, and it is not disputed, that Hill was his only creditor, and that he did not know he was indebted to him, and that during the time he owned a stock of furniture valued at $3,000, and other personal property of the value of $1,400, and real estate in his own name of the value of $7,000; and in addition to this the one-third interest in the partnership property, which was in the possession of Hill.   It appears that the plaintiff had purchased of Hill one-third interest in a nursery stock, paying him $850 in cash and executing his note for $1,450 and paying $100 on freight.   It so turned out that the plaintiff and his partners did not fully agree, when the plaintiff withdrew from any control of the business, leaving everything in the hands of Hill, the business being carried on by him and to a great extent in his own name.   During this time the plaintiff was seeking a settlement with his partner, but for some reason, possibly the fault of both, no settlement was made.   The plan of procuring these deeds to be made to his wife was adopted by the plaintiff for the purpose of "scaring" Hill into a settlement.   Hill testifies that he knew he was perfectly safe and in no danger of losing anything, and the testimony all shows that the greatest publicity practicable was given by the plaintiff to his course and his motives for it.

The settlement was finally made through arbitrators, who gave to the plaintiff one-third of the nursery, and awarded to Hill the sum of $1,493.42, which the plaintiff soon after paid, to Hill's entire satisfaction.

After a careful examination of the case we fail to find any proof of a fraudulent intent on the part of the plaintiff. That his course was unusual, we concede, but not that it was entirely unreasonable or proof of fraudulent intent. No man ever lost a dollar by it and it was not intended he should. No creditor was ever hindered or delayed one moment in the collection of his claims against the plaintiff, and it was not intended that he should be. Again it is shown that after the satisfaction of the award in Hill's favor, a portion of this property was purchased by the plaintiff and the title taken in the name of his wife. Her own declarations, as well as other proofs, show that the land was not hers and that she was holding it for the plaintiff. His debts were all paid and there was no one to defraud. On just what principle the defendants expect to get this land does not appear.

It is with much hesitation that we have written this opinion overturning the decision of this court in this cause, but prompted by a sense of duty, we could write no other. Our conclusions are reached entirely and alone upon the facts of the case. With the statements of the law contained in the opinion of the court upon the prior hearings we fully agree. Quoting from one of the briefs in this case we can truly say that the record in this case is "wretchedly written and abominably arranged," and it has been difficult to arrive at a conclusion as to what the facts were. But having done so to our satisfaction we must find that the findings and decree of the district court are sustained by sufficient evidence and must be affirmed, which is done.

DECREE AFFIRMED.

MAXWELL, J., concurs.