SHERWOOD *v.* DAVIS.

1. TRUSTS—VENDOR AND PURCHASER—RESULTING TRUSTS.

Under the provisions of 3 Comp. Laws, § 8835, abolishing resulting trusts where the title of real property is taken in the name of another than the person who furnished the consideration, no trust was created by the purchase of a farm with money of complainant, who caused the title to be conveyed to his daughter, intending that she should reconvey to him if he should so desire. 3 Comp. Laws, § 9509.

2. SAME—CONVEYANCES—EVIDENCE OF LOST WRITTEN INSTRUMENT.

In order to satisfy the provisions of section 9509, 3 Comp. Laws, a written instrument granting or vesting some estate in complainant must be produced or its loss accounted for and contents established by competent evidence.

3. SAME.

Evidence of general statements of a decedent that she had agreed to execute a conveyance at a later time, do not establish the execution and existence of such an instrument.

Appeal from Washtenaw; Kinne, J. Submitted November 15, 1911. (Docket No. 126.) Decided February 10, 1912.

Bill by George F. Sherwood against Fred L. Davis, administrator of the estate of Jennie L. Davis, deceased, and others, to set aside a certain deed of land and for further relief. From a decree dismissing the bill, complainant appeals. Affirmed.

*Frank A. Stivers,* for complainant.

*Arthur Brown,* for defendants.

BLAIR, J. Complainant, a resident of New Orleans, La., contemplating the purchase of a small tract of land in Ann Arbor, in this State, for the purpose of assisting his daughter, who was in straitened circumstances, and

to provide a home for himself in his declining years, appointed his daughter, Jennie L. Davis, his agent to represent him in carrying out his purpose. All communications between complainant and his daughter were by letter.

June 19, 1909, complainant wrote:

"I appoint you my agent in all matters appertaining to it, and expect you to take charge of the property for me. About the rent you are to pay, we will let that matter rest until such time as we see what can be done with it. I will see that you have a cow and horse and other things necessary to run it, so far as I can, and want you to keep me informed as to taxes, insurance, etc. I won't listen to any one else having a word to say in the matter and leave everything in your hands as my agent for which I will pay accordingly for services rendered.

"I, of course, expect you to live on the place and take care of it, until such time as I shall want it myself, when other arrangements can be made with me, and me only. If anything happens to me the place belongs to you. Keep this letter until I ask for it. Make a draft on our company for $1,500 and we will meet it at once. In the meantime if anything should happen to you, and I am alive, it of course will be for me to decide."

On June 28, 1909, he wrote, among other things:

"Have everything made out in my name as you understand I would not have the right to give it to you by law, without a will and I am buying it for two reasons. One, I may want it later on when I get through work, and also for a place for you, so you won't be paying out rent. * * * I don't want any trouble with the rest of them, and I am simply getting the ready money I have on hand into something for the future. In any case you will be better off and not be bothered every month for rent.

"I believe it can be made to pay and furnish you a good healthy living and I may never want it, but if I do, we can make arrangements so as not to make any trouble."

July 7th he wrote:

"I think we have made a good bargain and I don't want you to think you are going to get rich on it, for I am looking at it in this light, it will make an independent place for you and if I want to live on it later on I can do so, and not be holding to any of them."

In accordance with her father's instructions, Mrs. Davis employed Mr. Stivers, a member of the Ann Arbor bar, to perform the necessary legal services in examining the title and making the transfer. Mr. Stivers prepared a deed from the owners, conveying the land directly to complainant, which was deposited in a bank, to be delivered upon receipt of $1,500 in cash and a mortgage for $1,500, the balance of the purchase price. Mr. Stivers, having prepared the note and mortgage, forwarded them to complainant for execution and return July 3, 1909.

July 8, 1909, complainant wrote:

"The papers came this morning from Mr. Stivers, your attorney, and I placed them in the hands of my attorney, Mr. Buchmann. Now, Jennie, I have decided to have the property deeded to you, so you can sign the mortgage, and assume the whole business. It will be made out in your name. Of course, I will attend to sending you the payments as they come due, 1st of July and 1st of January, semi-yearly.

"Mr. Buchmann, my attorney, will write to Mr. Stivers so he will understand what to do. You of course and I expect Fred will have to sign the note and everything just as if you bought the property. If it is not necessary for Fred to sign it you need not have him do so. When everything is finished up I will get you to deed it back to me, and I expect you to agree to this. In this way I can control the property and keep it for you alone and not let any one bother you. A little later I will make a will and take good care that the others can't bother you. Don't let this letter lay around for anybody to read but yourself. I'm sure this is the best way and takes less time. I will see the bills paid, note and interest, etc., and send you money as I get to doing some business. You can get Mr. Stivers' bill when he gets through and send it to me. * * * I have enclosed your letters to Mr. Stivers and he will see that the business is carried out and recorded properly. Get everything straight and we can attend to the transfer back to me later on."

On the same day, complainant wrote to Mr. Stivers:

"I have decided to have the Grose property lately purchased by me deeded to my daughter, Mrs. Fred L. Davis

of your city, and she is hereby authorized to do all the business attached to same.

"My attorney, Mr. Buchmann, of New Orleans, will write you full particulars at once.

"Please see that the transfer and everything is properly attended to, and when finished send your bill to me."

July 9th complainant's New Orleans attorney wrote to Mr. Stivers:

"Mr. George F. Sherwood, of this city, to whom you sent for signature the enclosed mortgage and note, requests that you have the documents changed so as to have the property conveyed to his daughter, Mrs. Jennie L. Sherwood, wife of Fred L. Davis, who resides in Ann Arbor, instead of to himself. She will also execute the mortgage and note forming part of the sale. Mr. Sherwood has written to Mrs. Davis today advising her of his wishes in the matter, and also instructed the Farmers' & Mechanics' Bank to pay over to Mr. and Mrs. Grose the $1,500 which it has to his credit, to them, upon their execution of deed to property to his daughter just as it would have done had the deed been made in his favor. * * * I would also request that you insert in mortgage, clause corresponding with note showing that purchaser has the privilege of paying multiples of $50 at any interest paying date."

July 14th complainant wrote

"Your letter of the 11th just came and in relation to my changing my mind, I did it at the advice of my attorney and I know he is right. The idea is that I won't have you bothered by any of them, and when I want it deeded back to me (if I ever do) I will let you know and even then it will not make the slightest difference to you. I will take care of the mortgage and payments as they come due, and you must keep me posted a little ahead. * * * I thought the trouble would be less to have it and everything else put in your name, of course I will protect that a little later on with a will, for even as it is with you in possession you have a fight on your hands. * * * See that everything is all right and send the lawyer's bill to me, you have nothing to worry about. * * * You can rest assured that I am not staying down here by choice, and when I leave I intend to get

168 Mich.—26.

enough to be fairly comfortable, with what can be dug out of the farm. If you like it, when it is paid for we will add to it and be 'big Ingen farm.'"

July 25th he wrote, in part:

"You are all right, Jennie, and you understand that you have bought the farm, have the notes and everything in your name and I will give you the terms of payment soon enough and make you pay it, too, so don't worry about any gift enterprise. Don't worry and don't work yourself sick, and you will have the nicest, cleanest little farm in existence, and I'll help you make the Davis farm a model."

September 13, 1909, complainant wrote, in part:

"After a while I will consult my attorney or the one at Ann Arbor who attended to your work and arrange in some way by notes or will that will leave you safe to pay for the place, when I see fit to make the terms. As it is I doubt if I could buy it for you myself, and you understand that you are buying, in fact have bought it and I am simply your security."

In accordance with the changed plan, the $1,500 furnished by complainant was paid, the deed of the premises was made directly to Mrs. Davis, and she executed the note and mortgage to the bank; the vendor having received the money therefor from the bank. On the 25th of September, 1909, Jennie L. Davis died, leaving surviving her four infant children and her husband, Fred L. Davis, who was afterwards appointed administrator of her estate.

The bill of complaint prays:

"*First.* That said paper, purporting to be a deed, made the 14th day of July, A. D. 1909, and recorded in the office of the register of deeds in and for the county of Washtenaw, in Liber 175 of Deeds, at page 308, from Lorenzo D. Grose and wife to Jennie L. Davis, a copy of which is hereunto attached, marked 'Exhibit A,' as aforesaid, be declared null and void and inoperative for the conveyance of any of the real estate and property therein mentioned; that your orator be subrogated to the rights which the grantors in said deed, the said Lorenzo D.

Grose and wife, formerly had in the said premises; and that your orator be declared to be the legal owner in fee of said land and premises, subject only to the mortgage in favor of said Farmers' & Mechanics' Bank of Chelsea, Mich.

"*Second.* That if the relief prayed for in the foregoing paragraph be not granted by the honorable court, that your orator may be subrogated to the former rights of said Lorenzo D. Grose, so far as relates to that part of the consideration advanced by your orator towards the purchase of said premises, to wit, the sum of fifteen hundred dollars ($1,500), with interest thereon at the legal rate from the 14th day of July, A. D. 1909, and that your orator be declared to have a lien upon the said premises for the said amount and interest thereon, subject only to the prior incumbrance in favor of the said Farmers' & Mechanics' Bank of Chelsea, Mich.

"*Third.* That a receiver be appointed by the order of this honorable court to have charge of the said land and premises, and to collect the rent and income therefrom, pending the termination of this suit."

A decree was entered dismissing the bill; the circuit judge saying in his opinion:

"There is no real controversy as to the facts in this case. This transaction was intended for the benefit of both the daughter and the father; the daughter to enjoy it always, and the father to have it as his home, when he desired to retire from business. If the daughter had lived, there probably would have been no misunderstanding about their respective rights and interests in this property. The evidence abundantly proves the fidelity of the daughter to the trust reposed in her by her father, even to the last act in her life. She undoubtedly understood that it was her duty, and she stood ready at all times, to re-deed this property to her father upon his request. Hence it must follow that all the equities of this case are with the complainant, and he is entitled to the relief sought, unless his rights and remedies are barred by the statutes of this State. In my opinion, such is the case. The mere intention of the parties cannot prevail against the express enactments of the statute. I think that sections 8835 and 9509 are prohibitive against the bill of complaint in this case. It may be assumed that if the daughter had lived she would have carried out the wishes of her father; but

he allowed this title to pass unconditionally to her, and with her death it passed, in my opinion, to her heirs, and he is without remedy."

Complainant has appealed to this court.

Counsel for complainant contends that the statutory requirement of a written agreement was fully complied with. In support of this contention, he cites declarations of Mrs. Davis to the effect that she had agreed to reconvey to her father, which agreement must necessarily have been in writing, arguing that secondary evidence is admissible to prove the agreement evidenced by lost letters. Conceding that the declarations of Mrs. Davis establish the fact that she had agreed with her father to reconvey the land, and that such agreement must have been contained in a letter, is this sufficient to satisfy the statute? The deed was made with the full knowledge and consent, and by the express direction of, complainant, and the transaction was carried out by Mrs. Davis precisely as he wished her to carry it out. We are satisfied that complainant did not contemplate that his daughter should execute a formal paper, contemporaneous with the deed, or furnish Mr. Stivers with any information to enable him to protect complainant in that regard, since the letter of Mr. Buchmann, the contents of which he knew, contained no such instructions. The instructions, relative to getting everything straight, related to the conveyance of a perfect title. We are also satisfied that Mrs. Davis violated no trust or duty of any kind which she owed to complainant in taking the conveyance; and that the title vested in her, under the provisions of 3 Comp. Laws, § 8835, unaffected by the provisions of section 8837.

We are also satisfied that some kind of an arrangement existed as to a reconveyance of the land to complainant by Mrs. Davis, and that this arrangement was evidenced by the letters of the parties; but only one of the many letters of Mrs. Davis was produced, and that said nothing on the subject. Complainant testified that this was the only one of her letters which he could find, and no attempt

was made to prove by secondary evidence the contents or substance of any of the other letters.

To satisfy the provisions of 3 Comp. Laws, § 9509, an instrument in writing must be produced, or its loss must be satisfactorily accounted for, and its contents established. General statements, such as those made by Mrs. Davis that she had agreed to reconvey the land when her father came to see her in the fall, are not sufficient. This is one of those unfortunate cases where the courts can furnish no relief. See *Wipfler* v. *Wipfler*, 153 Mich. 18 (116 N. W. 544, 16 L. R. A. [N. S.] 941). This arises largely, however, through the carelessness of the complainant in failing to observe the care which his daughter exercised in keeping important business letters.

The decree is affirmed.

McALVAY, BROOKE, STONE, and OSTRANDER, JJ., concurred.