FLORENCE N. COOK, Admx. *et al.*

*v.*

HOSEA P. MEYERS, Admr.

*Filed at Ottawa April 3, 1897.*

1. CONTRACTS—*where parties to illegal agreement are in pari delicto the law will aid neither.* Where two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of the parties, as against the others, from the consequences of their own misconduct.

2. SAME—*when contract is not illegal though connected with former unlawful transaction.* A contract in relation to property respecting which there has been an unlawful transaction between the parties, will not be unlawful if founded on a new consideration unconnected with the former illegal act.

*Cook* v. *Meyers,* 54 Ill. App. 590, affirmed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

This is a bill, filed to foreclose a mortgage dated June 25, 1888, executed by Charles M. Cook, now deceased, in his lifetime, and Florence N. Cook, his wife, to John Hassett, who filed the original bill herein, but has died since the commencement of this suit, conveying a certain lot in Chicago for the purpose of securing two notes of the same date, made by the said Charles M. Cook to the said John Hassett, one for $1500.00, payable on or before one year after its date, and the other for $2145.00, payable on or before two years after date, both drawing interest at the rate of six per cent per annum. Florence N. Cook, the administratrix of Charles M. Cook's estate, and Charles F. Cook, his minor child, were made defendants to the bill. Answers were filed by Florence N. Cook and by the guardian *ad litem* of the minor.

The cause was referred to a master in chancery, before whom the testimony was taken, and who reported in favor

of granting the relief prayed for in the bill. Exceptions were filed to the master's report. Upon the coming in of the report the exceptions were overruled, and decree of foreclosure was rendered for the amount of the principal and interest due upon the mortgage. The case was taken to the Appellate Court, and the latter court has affirmed the decree of the circuit court. The cause is brought here by writ of error for the purpose of reviewing the judgment of affirmance, so rendered by the Appellate Court.

The defense set up by the defendant is based upon the following facts: The deceased Charles M. Cook in his lifetime was a stockholder in, and the treasurer of, a corporation, known as the Beaver, Wight & Wetmore Company; he had loaned money to that company and taken from it two notes, one of $5000.00, and the other of $2000.00, upon which a credit was endorsed of $800.00, leaving a balance due of $6200.00; he was an intimate friend and associate of John Hassett, and about the middle of April, 1886, he assigned the said notes, which were judgment notes, to said Hassett; Hassett procured judgment to be entered up upon said notes in his own favor, and issued execution thereunder, which was levied upon property of said company; certain creditors of the company filed a bill to enjoin the collection of the judgment, and obtained the appointment of a receiver, to whom the property, levied upon under the execution, was turned over by the sheriff under order of the court; at the time these notes were transferred by Cook to Hassett, Cook owed Hassett about $500.00 or $600.00, and thereafter Hassett advanced various amounts of money to Cook.

On October 10, 1887, an accounting was had between Hassett and Cook, and $1400.00 was ascertained to be due from Cook to Hassett, including said sum of $500.00 or $600.00 and the subsequent advances. Hassett insisted, that, in view of the litigation which had arisen out of the attempt to collect the judgment, so entered

up by him, the prospect of realizing anything from the judgment was not good; and that he would make no further advances unless additional security was given to him. Thereupon, Cook executed to Hassett on October 10, 1887, a quit-claim deed of the property afterwards embraced in the foregoing mortgage. The quit-claim deed was intended to be security for the $1400.00 advanced up to the time of its execution; and Hassett executed back to Cook an instrument of defeasance.

On June 25 or July 10, 1888, or between those two dates, another accounting was had between Hassett and Cook; and it was found that the total amount, which had up to that date been advanced by Hassett to Cook, was $2145.00; it was also ascertained, that Hassett had signed, as surety for Cook, a note executed by Cook to one Hart for the sum of $1500.00. Without going into the details of the Hart transaction, it is sufficient to say, that Hassett had to take up and pay for Cook the note for $1500.00. Accordingly, at the date of the last accounting on July 10, 1888, or thereabouts, Hassett conveyed back to Cook the property which had been deeded to him by the said quit-claim deed, and Cook executed to Hassett the two notes for said sums of $2145.00 and $1500.00, representing the indebtedness so incurred as aforesaid, and, for the purpose of securing said notes, made the mortgage which is herein sought to be foreclosed.

D. M. KIRTON, for plaintiffs in error:

A court of equity will relieve neither party to a fraudulent transaction, but it will leave them where it finds them. *Miller* v. *Marckle,* 21 Ill. 151; *Bolt* v. *Rogers,* 3 Paige, 154; *Nellis* v. *Cole,* 20 Wend. 24; *Dunaway* v. *Robertson,* 95 Ill. 419; *Ryan* v. *Ryan,* 97 id. 38; *Winston* v. *McFarland,* 22 id. 38; *Kassing* v. *Durand,* 41 Ill. App. 93; *Gill* v. *Henry,* 45 Pa. 383; Kerr on Fraud and Mistake, 374-376.

This doctrine is applicable to executory contracts. *Miller* v. *Marckle,* 21 Ill. 151; *Nellis* v. *Cole,* 20 Wend. 24

The court will, of its own motion, raise the objection of fraud if it appears from the bill or evidence, though defendant does not interpose such objection. *Hamilton* v. *Ball*, 2 Ired. Eq. 191; Kerr on Fraud and Mistake, 374.

P. T. KEILY, for defendant in error:

If the cause of action be unconnected with the illegal act, and is founded upon a distinct and collateral consideration, it will not be affected by former conduct. Kerr on Fraud and Mistake, 374; *Phalen* v. *Clark*, 19 Conn. 421.

Fraud is not to be considered as a single fact, but a conclusion to be drawn from all the circumstances of the case. *Brogden* v. *Walker*, 2 H. & J. 285; Kerr on Fraud and Mistake, 383, 384.

In cases of fraud the injured party cannot repudiate the transaction so far as it is injurious to himself and adopt it so far as beneficial. He must allow it to stand or set it aside *in toto*. Bispham's Eq. sec. 204, and cases.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

It is claimed by plaintiffs in error, that the sums of $2145.00 and $1500.00 represent purchase money, paid by Hassett for the two notes against the Beaver, Wight & Wetmore Company which were assigned to him, and that, inasmuch as the moneys represented by the notes for $2145.00 and $1500.00 were paid by Hassett for the purchase of the Beaver, Wight & Wetmore notes, the notes, secured by the mortgage herein sought to be foreclosed, are without consideration; and that Cook not only owes Hassett nothing, but that Hassett is indebted to Cook for the difference between the two notes for $2145.00 and $1500.00 and the $6200.00, which was due upon the Beaver, Wight & Wetmore Company notes when they were assigned to Hassett.

It is furthermore contended by plaintiffs in error, that, when the notes and mortgage now sought to be

foreclosed were executed by Cook and his wife, Cook had become so injured in mind and body by the excessive use of intoxicating drinks, that he did not understand what he was doing; and that his wife was forced to sign the mortgage, securing the said notes, by threats made by Hassett.

It is still further claimed by plaintiffs in error, that, if there was no purchase by Hassett from Cook of the notes against the Beaver, Wight & Wetmore Company in the manner stated, then that the assignment of such notes by Cook to Hassett was made for the fraudulent purpose of giving Cook, through Hassett, a preference over the other creditors of the Beaver, Wight & Wetmore Company. The evidence tends to show, that, when the assignment was made to Hassett, the company was insolvent, and it was supposed by Cook and Hassett, that, as Cook was a stockholder in the company and its treasurer, the notes held by him against the company could be better collected by transferring them to some third person, and having judgment entered up in the name of that third person. The theory was, that, by the transfer to Hassett, the equities, which would exist in favor of the other creditors of the company as against Cook, could not be set up as against Hassett, if the latter were held out as a *bona fide* purchaser of the judgment notes.

The evidence does not clearly show, that there was an absolute purchase by Hassett from Cook of the notes against the Beaver, Wight & Wetmore Company. Those notes were transferred to Hassett with the understanding, that he should enter up judgment upon them, and levy upon the property of the judgment debtor, and collect the amount of the judgment, and out of it pay himself what he had theretofore advanced, and might subsequently advance to Cook, and then pay over to Cook the surplus, if any there should be. If the parties regarded the transfer of the judgment notes to Hassett as a purchase of them by Hassett, and the money, repre-

sented by the mortgage sought to be foreclosed in this case, as purchase money paid for said judgment notes, then it is difficult to understand why Cook executed the notes and mortgage dated June 25, 1888, upon his land. Upon the theory of such a purchase as is claimed to have been made, nothing was due from Cook to Hassett on June 25, 1888. The contention, that Cook was so imbecile at that time from the use of intoxicating drinks as not to be able to understand what he was doing when he executed the notes herein sought to be foreclosed, is not sustained by the evidence. We think, that the report of the master, and the decree of the circuit court, and the judgment of the Appellate Court, all finding against any such imbecility, or want of understanding, as is claimed, are supported by the testimony in the case.

Moreover, when the accounting on October 10, 1887, was had between the parties, it was agreed by Cook that he owed Hassett $1400.00 for moneys theretofore advanced to him by Hassett; and nothing was said at that time about the advancing of any moneys as purchase money for the notes against the Beaver, Wight & Wetmore Company. So, also, in the accounting which was had on July 10, 1888, it was agreed between the parties that Cook was then indebted to Hassett for the $2145.00 theretofore advanced, including the $1400.00 already mentioned, and for $1500.00 by reason of signing said Hart note as surety for Cook. The indebtedness then arrived at was figured up and agreed upon without any reference whatever to the notes against the Beaver, Wight & Wetmore Company, or to the consideration for which those notes were assigned by Cook to Hassett.

Undoubtedly, there was some arrangement or understanding between Cook and Hassett, when the notes against the said company were assigned to Hassett, that Hassett should enter up the judgment in his own name for the purpose of giving Cook a preference over the other creditors of the company. Being a stockholder

and officer of the company, he would not be entitled to such preference under the law as it has been laid down by this court. (*Beach* v. *Miller*, 130 Ill. 162; *Roseboom* v. *Whittaker*, 132 id. 81; *Atwater* v. *American Ex. Bank*, 152 id. 605). The transfer of the judgment notes to Hassett may therefore be regarded as having been made for an unlawful purpose. But it is to be noted, that that purpose was not the hindering and delaying of the creditors of Cook himself, but the obtaining of a preference over the creditors of the company, of which Cook was an officer and also a creditor. There is no claim, nor any proof tending to show, that Cook himself individually was at that time insolvent. The indebtedness of $500.00 or $600.00 which Cook then owed to Hassett, and the further indebtedness which grew out of subsequent advances of money made by Hassett to Cook, were a real and actual indebtedness. It was the *mode*, adopted for the collection of that indebtedness by the assignment of the company's notes to Hassett and by the entry up of the judgment in Hassett's name, rather than the indebtedness itself, which was unlawful.

On October 10, 1887, when an accounting was had between the parties, Hassett distinctly stated, that he was not satisfied that the amounts due him could be realized from the judgment entered up in his name; and, as a consequence, he demanded other security. When the quitclaim deed was executed at that time, and subsequently when the mortgage was executed which is here sought to be foreclosed, there was a new recognition by Cook of his indebtedness to Hassett, and a new promise to pay that indebtedness, manifested by the execution of new papers, and distinct from the assignment of the notes against said company. Hence, we do not think that the transaction here involved comes clearly within the doctrine of the cases, which hold that, where a transaction is tainted with fraud as between the parties to it, a court will not assist either, but will leave them in the position

in which they have placed themselves. Where parties are concerned in illegal transactions, courts of equity will not interpose to grant any relief, acting upon the well-known maxim: *in pari delicto potior est conditio defendentis.* Counsel for plaintiffs in error invokes and seeks to apply the rule upon this subject, laid down by this court in the following cases: *Miller* v. *Marckle*, 21 Ill. 152, *Winston* v. *Mc-Farland*, 22 id. 38, *Dunaway* v. *Robertson*, 95 id. 419, and *Ryan* v. *Ryan*, 97 id. 38. We adhere to, and fully endorse, the doctrine announced in the cases thus referred to, but we do not regard them as having any application here.

If the mortgage, here sought to be foreclosed, had been executed by Cook to Hassett for the purpose of hindering and delaying Cook's creditors, or for any other unlawful purpose, and if the notes secured by that mortgage were without consideration, or tainted with fraud, then the rule announced in the cases referred to would be applicable. But here, the purpose of the mortgage is not to place an incumbrance upon the property having the appearance of a valid indebtedness, with a view to keeping the property out of the reach of the creditors of the mortgagor; on the contrary, the indebtedness secured by the notes and mortgage is a *bona fide*, valid indebtedness for money actually advanced.

While it is true that, where two or more persons are engaged in a fraudulent transaction to injure another, neither law nor equity will interfere to relieve either of those persons as against the other from the consequences of their own misconduct, it is also true, that, where the contract is founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, it will not be regarded as unlawful. If the promise be unconnected with the illegal act and founded on a new consideration, as is the case here, it will not be tainted by the act. (*Bishop* v. *American Preservers'* Co. 157 Ill. 284). We think, that the view, expressed by the Supreme Court of Con-

necticut in the case of *Phalen* v. *Clark,* 19 Conn. 421, may be regarded as the correct view in regard to the present transaction. In the latter case the court said: "We suppose it to be a well settled doctrine, that, if a plaintiff requires any aid from an illegal transaction to establish his demand, he cannot recover it; or, in other words, if he is unable to support it without relying upon an unlawful agreement between himself and the defendant, he must fail. But if the parties have been engaged in business, either *malum in se,* or merely prohibited by law, yet if the cause of action be unconnected with the illegal act, and is founded upon a distinct and collateral consideration, it will not be affected by their former unlawful conduct."

Accordingly, the judgment of the Appellate Court and the decree of the circuit court are affirmed.

*Judgment affirmed.*