ANNA JOLLY

*v.*

OSMER E. GRAHAM *et al.*

*Opinion filed October 23, 1906.*

1. DEEDS—*deed executed to defraud grantor's wife is binding upon him and his heirs.* A deed executed and delivered by the grantor to defeat his wife's rights in the property is binding upon the grantor and his heirs, and a court of equity will not interfere at the instance of either to set the deed aside.

2. FRAUD—*when equity will not aid a party to regain property.* The law will not permit a party to deliberately put his property out of his control for a fraudulent purpose, and then, through the intervention of a court of equity, regain the same after the fraudulent purpose has been accomplished; and this rule applies not only to him, but to his heirs and assigns.

3. SAME—*deed made for fraudulent purpose does not create a trust.* A deed made for the purpose of placing the title to property out of the reach of the grantor's wife does not create a trust relation between the parties.

4. INFANTS—*infants cannot be deprived of rights by any agreement as to validity of title.* Where a deed from father to son is not delivered until after the father's death, when it is signed by the mother and delivered to the son, no title passes by virtue of the deed, and a deed subsequently made by the son to put the title out of the reach of his wife may after his death be repudiated by his minor children, who may claim an undivided interest in the land of their grandfather, as heirs of their father, notwithstanding any agreement that the deed to their father should be considered as vesting title in him.

WRIT OF ERROR to the Circuit Court of Jasper county; the Hon. S. L. DWIGHT, Judge, presiding.

JAMES W. GIBSON, for plaintiff in error.

DAVIDSON & ISLEY, for defendants in error.

Mr. JUSTICE WILKIN delivered the opinion of the court:

At the April term, 1905, of the circuit court of Jasper county, the defendants in error, Osmer E. Graham, Thomas L. Graham and Laurel C. Graham, by Martha E. Carey,

their next friend, filed a bill for partition against the plaintiff
in error, Anna Jolly. The bill alleged that Charles H. Gra-
ham, the father of the complainants, died intestate on June
19, 1902, seized of certain real estate situated in Jasper
county; that he derived title to the same on February 1,
1893, from his father, Thomas Graham, and that on Decem-
ber 26, 1893, Charles H. Graham and his wife executed a
deed of conveyance therefor to his mother, Rebecca Graham,
who on January 5, 1894, conveyed the same to the defend-
ant, Anna Jolly; that both of said last mentioned convey-
ances were without consideration, were merely colorable and
never intended to convey any interest in said premises to the
grantees; that subsequent to the execution of said deeds
Charles H. Graham remained in the possession of said real
estate, received the rents and profits therefrom and paid the
taxes thereon, and if the said Anna Jolly derived any inter-
est in the same by virtue of said deeds, she held it in trust
for the said Charles H. Graham and his heirs-at-law. It is
also alleged that the said Anna Jolly executed a deed con-
veying said premises back to the said Charles H. Graham,
which deed has been lost; also that said Charles H. Graham
died seized of the premises in question, and the complain-
ants, as his children and heirs, are the owners thereof in
equal shares. The prayer is that said deeds of conveyance
from Charles H. Graham to Rebecca, and from the latter to
the defendant, Anna Jolly, be set aside as clouds upon the
title of the complainants, and for partition. The hearing
was upon bill, answer, replication and proofs, and the court
rendered a decree granting the prayer of the bill, from which
this writ of error has been sued out.

Thomas Graham, the father of Charles H. and grand-
father of the complainants below, was the owner of land in
Jasper county, this State, including that here in controversy.
On March 7, 1892, intending to divide his lands between his
children, he made certain deeds, among others one to his
son Charles H. for the north half of the north-west quarter

and the north half of the south half of the north-west quarter of section 31, township 8, north, range 9, east, in said county, being the same lands described in the complainants' bill. These deeds were never delivered by Thomas Graham but retained by him to the time of his death, which occurred on the 15th day of July, 1892. His wife, Rebecca Graham, did not join him in the execution of the same, but after his death signed and attempted to deliver the deeds to the respective grantees therein named, giving to Charles H. the one to him, as above stated. That deed described the homestead of the father, Thomas Graham, and after his death and the delivery of the deed to Charles H. by his mother, he, together with her, Rebecca Graham, and his sister, Anna Jolly, the plaintiff in error, and his own wife, continued to reside thereon for a period of five years, during which time the children, the complainants in this bill, were born. Differences arose in the family, resulting in quarrels and disagreements between himself and wife and between her and the mother and sister, which finally resulted in the wife's abandonment of the home. The cause of their disagreement and the responsibility therefor need not now be discussed nor considered. It is very clear that the wife lived unhappily in the home, and complained that both her husband and his sister, Anna, mistreated her in such a way as to render her life miserable. About the time the deed of February 1, 1893, was delivered to Charles H. Graham, his wife left him and returned to her parents, and he became exceedingly anxious lest she should involve him in a suit for separate maintenance or for a divorce with alimony and the property in question be taken from him or encumbered, and he made earnest efforts to secure her return, procuring the aid of friends and neighbors to that end. He said he did not care for her nor for her return, but did not want his property to fall into her hands nor the hands of her family. He succeeded in inducing her to return to him, and thereafter, by persuasion, induced her to join him in a deed of conveyance to his mother, Rebecca.

The evidence shows that he then declared if he could get her to sign the deed so as to get title out of him, he did not care what took place. He used persuasive arguments to induce her to join him in that deed, telling her that his mother felt that the home place should be hers and that she was without a home, and that in his opinion it would harmonize matters between them if the deed was made. The deed was executed on December 26, 1893, and the families continued to reside in the homestead, the title remaining in the mother until January 5, 1894, when she, with the consent of Charles H., conveyed it to the plaintiff in error. Thereafter, in the year 1895, Charles H. and his wife finally separated and she obtained a divorce against him. The mother died January 22, 1900, and the premises continued to be occupied by Charles H. and his sister, the plaintiff in error, until the spring of 1902, when he went west and died June 19 of that year.

In this litigation the parties seem to concede that the legal title to the premises in controversy vested in Charles H. by virtue of the deed executed by his father, Thomas Graham, signed by his mother and delivered after the death of the grantor. On that concession it is insisted on behalf of the plaintiff in error that the decree of the circuit court is erroneous because of the evidence failing to show that the deeds from Charles H. to Rebecca and from her to the plaintiff in error were merely colorable and not intended to convey the title to the grantees therein named; also that the evidence shows that those conveyances were made and procured to be made by Charles H. Graham, the father of the complainants below, for the fraudulent purpose of putting the property out of his hands to defeat the marital rights of his wife in case she should sue him for separate maintenance or for a divorce and alimony, which being true, a court of equity will not set aside those deeds on his application or that of the complainants, his heirs. We think the evidence clearly shows that the conveyances in question were executed without consideration. It does clearly appear that the

intention, both of the grantor and grantees in those deeds, was to vest title in the latter. We are also convinced that the sole object and purpose of the grantor, Charles H. Graham, in making the deed to his mother and afterwards consenting that the property should be conveyed to his sister, was for the purpose of cheating and defrauding his wife. This being true, the conveyances became binding upon the grantor, Charles H., and all parties in privity with him. Having conveyed the property for the fraudulent purpose of defeating the rights of his wife, the law will leave him where he placed himself. Both his mouth and that of his heirs are closed to question the validity of the conveyances. (*Miller* v. *Marckle,* 21 Ill. 152; *Kirkpatrick* v. *Clark,* 132 id. 342; *Jones* v. *Jones,* 213 id. 228.) The law will not permit a party to deliberately put his property out of his control for a fraudulent purpose, and then, through the intervention of a court of equity, regain the same after his fraudulent purpose has been accomplished. And this rule applies not only to him, but to his heirs and assigns. There is nothing in this record upon which to base the claim that by the deeds a trust relation was created between the parties. The purpose, as we have already said, was to place the title beyond the reach of the wife of the grantor, and no trust was or could be thereby created. There is not here even an agreement to re-convey to Charles H., nor is there any promise in writing that the property was to be held for his benefit or for the benefit of his heirs. The court erred in granting the relief prayed upon the ground that as between these parties the deeds sought to be set aside as clouds upon the complainants' title were merely colorable and did not vest the title in the plaintiff in error.

Nor are we able to agree with the learned chancellor that the testimony in this record justifies the conclusion that the plaintiff in error, Anna Jolly, did in fact deliver a deed to Charles H., during his lifetime, re-conveying the premises to him. We have given careful consideration to this conten-

tion on behalf of the complainants below, and find the evidence, to say the least, so conflicting and unsatisfactory as to be wholly insufficient to authorize a decree divesting the plaintiff in error of her title.   In the first place, there is an entire absence of proof of the existence of any such deed,— that is, no witness testifies to having knowledge of the execution, acknowledgment or delivery of any deed of conveyance from Anna Jolly to Charles H. Graham, or to having seen such a deed or having other personal knowledge of its existence.   Two witnesses testify to declarations by the plaintiff in error to the effect that she made a deed back to her brother, but the testimony of these witnesses is vague and more or less uncertain, while she testifies positively that she never made such a statement, and as to one of the witnesses she is corroborated by her daughter, who was present at the time of the alleged statement.   Several witnesses testified that Charles H. stated shortly prior to his going west that the title to the land was in his sister, Mrs. Jolly, and we think the clear preponderance of the evidence is that no attempt was made by the plaintiff in error to re-convey the land to Charles H., but that the legal title continued in her after his death and to the present time.   There is abundant evidence in the record to the effect that he claimed to be the owner of the land and that she admitted that fact, but the same evidence which proves these facts also proves that he had fraudulently placed the title in her for the purpose of defrauding his wife, as above stated.

Our conclusion is, that if the title became legally vested in Charles H. Graham it passed by his deed to his mother and by her deed to the plaintiff in error, and that because of his fraudulent purpose in so conveying the title a court of equity cannot set aside and annul those deeds at the instance of the complainants, his heirs, and that the decree below cannot be sustained upon the ground that there was a re-conveyance of the title to him by plaintiff in error, for the want of competent and sufficient evidence to sustain that contention.

We are of the opinion, however, that the title to the lands here in controversy never became legally vested in the father of the complainants below, Charles H. Graham. The deed from his father to him was never delivered by the father, and it is too clear for argument that under the evidence in this case his widow, Rebecca Graham, could not legally deliver it after her husband's death. It is true counsel on either side say they do not wish to question the legality of the title in Charles H., and manifestly, in the view which they take of the case, it was to their interest to make no contest on that question. The rights of both parties on the bill and answer depended upon the validity of that title; but in the view we take of the case these minor complainants ought not to be precluded by any agreement or consent as to the validity of that title, but may base their claim to an undivided interest in the lands of their grandfather through their father, Charles H. Graham, and repudiate the deed of conveyance set up in the bill.

For the reasons stated the decree of the circuit court will be reversed and the cause remanded to that court for further proceedings in conformity with the views here expressed.

*Reversed and remanded.*