## Altje Wiltz, Plaintiff in Error, v. Lewis Classen, Defendant in Error.

### Gen. No. 5,161.

1. APPEALS AND ERRORS—*when judgment presumed supported by evidence.* In the absence of a bill of exceptions purporting to contain all the evidence heard or entitled to be considered by the trial judge, the presumption will prevail that the judgment was supported by the evidence.

2. REPLEVIN—*when claims of true owner denied on grounds of public policy.* Where two parties are engaged in an unlawful transaction, and in the accomplishment of an illegal purpose and one

which is contrary to good morals and public policy one obtains possession of property claimed by the other, the law will not aid either party, but will leave the parties in the situation in which they have placed themselves.

Replevin. Error to the Circuit Court of Woodford county; the Hon. G. W. Patton, Judge, presiding. Heard in this court at the April term, 1909. Affirmed. Opinion filed March 11, 1910.

Barnes & Magoon, for plaintiff in error.

J. A. Riely and Thomas Kennedy, for defendant in error.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Lewis Classen, on or about March 1, 1906, sold a stallion to certain parties for $1,400 taking separate notes from the several buyers aggregating that sum. The notes were dated March 1, 1906, were due in one year, and were payable to Classen. Altje Wiltz claimed that he had bought this and several other stallions from Classen in the barn of the latter at Minonk, Illinois, on January 5 or 6, 1906, and that the notes given for this horse were his property. He brought this suit in replevin against Classen to recover possession of the notes, and failing to get them by the writ, added to his declaration in replevin a count in trover. Afterwards the notes (except two, aggregating $250 which were not in the possession of either party), were deposited with the clerk of the court, there to remain, with their proceeds if collected, to abide the final judgment in the case. It was stipulated that the case was to be treated as if the notes had been obtained upon the writ, that a proper declaration in replevin should be considered filed, that any defense be allowed that could be properly pleaded, and that a jury be waived. The cause was tried by the court without a jury, and there was a finding that Classen was entitled to the possession of the notes as against Wiltz. There was a judgment against Wiltz for the costs, except one-half

of a certain item. Wiltz has sued out this writ of error to review said judgment.

It is not argued that the court erred in any ruling upon the admission of evidence or upon propositions of law. The assignments of error upon those subjects are therefore waived. The only question argued is whether the judgment is so clearly against the weight of the evidence that it should be reversed. The record discloses two reasons why the judgment must be affirmed.

1. The week before the trial of this cause a suit brought by Wiltz against Lewis Classen and his father and surety, Klaas Classen, upon a certain $1,500 note, had been tried before the same judge, in which suit Lewis Classen had filed a plea of set-off which involved to some extent the same subject-matter as this suit, and had filed a bill of particulars under said plea. At the commencement of the trial of the present suit it was stipulated by the parties that "as the trial court heard the evidence in the case of Altje Wiltz v. Lewis Classen and Klaas Classen this court, in considering the present case, may take into consideration any evidence given in said former case which the court deems competent under the issues in this case." In the bill of exceptions, after the evidence which it contains, is the recital: "The foregoing was all the evidence and testimony in this case." It does not purport to contain any of the evidence introduced at the trial of the former case. None of the evidence is contained in this bill of exceptions. It is said now that some remarks made by counsel just before Wiltz closed his case in chief waived that stipulation. That conversation was only to the effect that either party could have such parts of the testimony at the other trial as he desired written up by the reporter and put it in evidence. There was no retraction or modification of the former stipulation that the trial judge, who had tried the former case the week before, might take into consideration any evidence in the former case which he

deemed competent under the issues in this case. We think it plain that the later conversation between counsel was not intended to modify the stipulation under which this trial was had. The judgment of the court below is presumed to be proper till the contrary is shown by the party who seeks its reversal. Hence, if the evidence heard at this trial does not sustain the judgment, we must presume in its support that the evidence heard at the other trial by the same judge was considered, and authorized this judgment.

2. The proof introduced by Classen in defense was to the effect that Wiltz was a resident of East Friesland, Germany; that for several years Wiltz had been engaged in the business of buying stallions in Europe, importing them to this country and selling them here; that in 1903 a statute was enacted which enabled a citizen of the United States to import stallions for breeding purposes without paying the duty of twenty-five per cent of their value imposed upon stallions imported by foreigners; that Wiltz, not knowing this, imported a lot of stallions in 1904 in his own name, upon which his brokers in New York were compelled to pay a duty of $1,285.25; that afterwards an arrangement was made between Wiltz and Classen, by which Classen made a false claim to the United States that these were his horses and imported by him for breeding purposes and therefore not subject to duty, and the duty was refunded by a check payable to Wiltz, but sent to Classen and by him delivered to Wiltz. It was then agreed between Wiltz and Classen that Wiltz should thereafter buy stallions in the name of Classen and import them in the name of Classen and thus avoid payment of the duty. A paper stating that Wiltz was buying horses abroad for Classen was executed by Classen and lodged in the New York Custom House. In 1905 Wiltz bought in France a lot of stallions in the name of Classen, paid for them with his own money as before, took the pedigrees in the name of Classen, consigned them to Classen, wrote Classen to meet him

in New York, and gave him certain directions in regard to their shipment from New York to Minonk. Classen did meet Wiltz at New York. Wiltz paid the brokerage. The horses were shipped to Minonk and were advertised for sale there and elsewhere in the name of Classen, and the horse here in question was sold by Classen as his own property, the notes therefor were made payable to Classen and he gave a personal written guarantee of the horse. The evidence introduced by Classen was to the effect that Classen never owned any of these horses, that they always belonged to Wiltz, and Classen was only the employe and agent of Wiltz in holding, advertising and selling them, and that the transaction was conducted in the name of Classen to avoid the payment of the duty. Wiltz testified that though it was his money which bought this second shipment of horses, yet that he bought them solely as the agent of Classen, and that after they reached Minonk Classen could not pay him and so he then bought them from Classen on January 5 or 6, 1906, in Classen's barn at Minonk. He does not claim that any money or papers passed, or that the pedigrees were transferred to him, nor did he take possession of the horses. Classen thereafter kept the horses, and advertised and sold them in his own name, with the knowledge of Wiltz. Classen denied that he sold them to Wiltz in his barn, and denied that he had ever owned them. He refused to turn over these notes till certain controversies were settled concerning commissions and expenses claimed by Classen and concerning the $1,500 note, which was the subject of the other suit, and which had been given in some transaction concerning the horses imported by Wiltz in 1904. But being sued for the possession of the notes, he set up that they were given in a transaction which was being so conducted for the purpose of defrauding the government of the United States out of the revenue to which it was by law entitled under the real facts. There were incidental facts and circumstances and cer-

tain letters not here mentioned which tended to support the version of the transaction given by Classen. The trial judge below believed Classen. We cannot say that he should have believed Wiltz instead. On the contrary, we find that the preponderance of the evidence supports that defense. It is suggested that the fraud is past, and that the notes are not connected therewith. If Wiltz had advertised and sold the horses in his own name and had taken notes to himself therefor, the revenue officials might have ascertained the facts and enforced the payment of the duty and prosecuted those guilty of the fraud. To carry out the scheme safely, it was at least wise if not essential to have the horses sold by Classen as if he were the real owner. The notes were taken as a part of the plan by which the United States was defrauded of the duty. Where two parties are engaged in an unlawful transaction, and in the accomplishment of an illegal purpose and one which is contrary to good morals and public policy one party obtains possession of property claimed by the other, the law will not aid either party, but will leave the parties in the situation in which they have placed themselves. Miller v. Marckle, 21 Ill. 151; Kirkpatrick v. Clark, 132 Ill. 342; Bishop v. American Preservers Co., 157 Ill. 284; McNulta v. Corn Belt Bank, 164 Ill. 427; Cook v. Meyers, 166 Ill. 282; Jolly v. Graham, 222 Ill. 550. Therefore, although Wiltz is the true owner of these notes, yet as the court below found from the greater weight of the evidence that the title to the notes was placed in Classen as a part of a scheme to which they were both parties by which the government was defrauded, the court below properly refused its aid to the plaintiff.

The judgment is therefore affirmed.

*Affirmed.*