Argued October 25; modified December 14, 1948

# BOWNS *v.* BOWNS
200 P. (2d) 586

*A. C. Allen,* of Portland, and *Hallock, Donald, Banta & Silven,* of Baker, filed a brief for appellant.

*Leland F. Hess,* of Portland, and *Charles R. Cater,* of La Grande, argued the cause and filed a brief for respondent.

Before ROSSMAN, Chief Justice, and LUSK, BELT, BAILEY and HAY, Justices.

BAILEY, J.

This is an appeal by defendant Leon G. Bowns from a decree granting plaintiff Alice J. Bowns a divorce from him; adjudging her to be the owner of the real property hereinafter described, the garage building located thereon and all the equipment in said building; and awarding her judgment against the defendant for the sum of $200, being the unpaid balance of the amounts which the court had previously ordered defendant to pay to her for attorney's fees, costs of prosecuting the suit, and for her maintenance during its pendency.

In her amended complaint plaintiff alleges that she and the defendant were married at Spokane, Washington, on or about December 24, 1911; that she was, and had been for more than one year immediately prior to the institution of this suit, a resident and inhabitant of the State of Oregon; that she was "the owner of

the furniture and household effects in the home at Bend, Oregon''; that defendant had been gainfully employed, and that she was without funds to prosecute this suit. Plaintiff further alleges that since their marriage the defendant has ''pursued toward plaintiff a course of cruel and inhuman treatment and has heaped upon her gross personal indignities, rendering her life burdensome in some of the following particulars:

''1—That the defendant over a long period of time has manifested toward the plaintiff an attitude of coldness and indifference; has bestowed upon her no love or affection; has absented himself from the home for long periods of time without explaining his whereabouts, and has generally left the plaintiff to shift and provide for herself;

''2—That the defendant has sought the companionship of other women, and particularly a woman in Los Angeles, and the defendant kept up a correspondence with said woman for a considerable period of time to the knowledge of this plaintiff and to her great humiliation.''

Plaintiff prays for a decree (1) granting her a divorce from defendant, (2) declaring her to be the owner of the furniture and household effects referred to in the complaint, (3) awarding her $100 a month as alimony or in lieu thereof $10,000 alimony in gross, and (4) for her costs and a reasonable amount as attorney's fees.

In his answer defendant admits that plaintiff and defendant were married as alleged in the amended complaint and that plaintiff has been for more than one year last past a bona fide resident of the State of Oregon, and denies all the other allegations of the amended complaint. Defendant also filed a counterclaim in which he seeks a divorce from the plaintiff

and a decree declaring him to be the owner of an undivided one-half interest in the following described real property situate in the City of Baker, to wit: All of Lots Numbered Eight (8) and Nine (9) and the north 10½ feet of Lot Numbered Ten (10) in Block Numbered One (1) of the United States Townsite of Baker City.

After restating the averments contained in the amended complaint relating to the time and place of their marriage and of the residence of plaintiff, defendant alleges that subsequent to their marriage, and particularly during the last four years, the plaintiff has heaped upon him treatment which has rendered his life burdensome and has made it impossible for him to longer live with and endure the plaintiff as his wife. Some of such acts of cruelty are alleged to be as follows: That plaintiff has falsely accused defendant of wrongfully associating and corresponding with other women; that for many years plaintiff has "taken a dominating attitude toward this defendant" and "has vented her ungovernable temper against" him; that plaintiff has for many years "maintained a very stoic attitude toward the defendant", and "has been cold and indifferent" to his wishes, and "has given to this defendant no love or affection"; and that plaintiff has been morose and sullen around the home and for periods of time would not speak to him and when she would speak to him "it was only for the purpose of nagging at him or finding fault with him."

Defendant further alleges that during the year 1929 he constructed upon the real property hereinbefore described a garage building at a cost of approximately $33,000 and installed therein certain garage equipment at a cost of $5,000; that he furnished the entire funds

for such construction and for the purchase of the equipment therein, with the exception of $24,000 which was borrowed and payment thereof secured by a mortgage on the property; and that he operated said garage building for several years, "but because of adverse business conditions, was unable to operate the same profitably, and on April 21, 1934, the plaintiff and the defendant herein entered into an agreement under the terms of which it was agreed that the defendant would deed said building and the lands upon which the building was situated, to the plaintiff so that said plaintiff could operate said building while this defendant took employment elsewhere, it being understood that the plaintiff should retain title to said premises until the defendant herein requested that the plaintiff deed back to him, that is, the defendant, an undivided one-half interest in said premises".

It is further alleged by the defendant that for several years after the conveyance of the hereinbefore described property by him to the plaintiff he worked at various jobs and that the money which he was able to accumulate, together with the rentals from the garage, were "used in paying the taxes, repair costs, and in paying off the mortgage upon said premises"; that early in 1943 and in May, 1944, defendant requested plaintiff to "deed back to him an undivided one-half interest in and to said premises, and the said garage building," which plaintiff refused, and still refuses, to do; and that all the equipment located in the garage building has been and now is his property.

The answer and counterclaim conclude by asking that plaintiff's complaint be dismissed; that defendant be given a decree of divorce from the plaintiff; that defendant be decreed to be the owner of a one-half

interest in the real property hereinbefore described, and that he have a decree restoring to him the personal property located in the garage.

Plaintiff in her reply to said counterclaim admits the allegations as to the date and place of their marriage, her residence in the state for more than one year prior to the institution of this suit, and that the defendant constructed the building therein described and encumbered it with the mortgage therein referred to. Plaintiff further admits that defendant was unable to operate the said property profitably. All the other allegations of the counterclaim are denied. For a further and separate reply to said counterclaim plaintiff alleges that all the real and personal property described in the counterclaim is, and at all times since the conveyance to her thereof in 1933 has been, her sole and separate property; that the defendant did, during the year 1933, give and convey the same to her unconditionally; that said property is not the community property of plaintiff and defendant and that defendant has no interest therein; that fourteen years have elapsed since the realty was conveyed to her; that a period of four and one-half years has elapsed since defendant alleges that he made demand upon her for a conveyance of an undivided one-half interest therein; that "during such time the plaintiff has suffered what is commonly referred to as a stroke resulting from cerebral hemorrhage and as a result thereof has been paralyzed and absolutely helpless for many months", and that because of the facts therein alleged defendant has been guilty of laches in presenting his claim.

The prayer of the reply, in addition to the relief sought in the amended complaint, asks that defendant's counterclaim be dismissed, that plaintiff be de-

clared to be the owner of the real and personal property described in defendant's counterclaim, and, in the event the court finds that defendant is the owner of any interest in said real or personal property, that such interest be awarded to plaintiff as her sole and separate property.

The defendant sets forth four assignments of error, as follows: (1) That there is no evidence to support the findings of fact or the decree declaring the plaintiff to be the owner of the equipment and personal property purchased and installed in the garage building; (2) the court erred in granting to the plaintiff a decree of divorce; (3) the court erred in compelling defendant "to introduce evidence 'Under the Rule' to prove the circumstances surrounding the execution of the deed from" defendant to plaintiff of the property hereinbefore described, and (4) the court erred in failing to declare the plaintiff a trustee ex maleficio for defendant for a one-half interest in the real property hereinbefore described and in not declaring defendant to be the owner of a one-half interest therein.

■ We shall first dispose of defendant's second assignment of error. Defendant does not discuss this assignment at length. He asserts that had plaintiff carried out her agreement concerning the garage property at Baker, Oregon, there would have been no marital trouble between the litigants and therefore no suit for a divorce. He does not refer to the specific acts of cruelty charged against him by the plaintiff or the acts of cruelty which he charged against her, nor does he discuss the evidence about any of them. We concur in the finding of the Circuit Court that plaintiff has proved by a preponderance of the evidence the allegations of the amended complaint relative to defend-

ant's cruel and inhuman acts toward her. In our opinion the court did not err in granting her a decree of divorce against defendant or in denying his request for a divorce. Under the circumstances no good purpose would be served by a detailed analysis of the evidence.

We shall follow the course pursued by the defendant and consider his third and fourth assignments together. All the testimony offered by the defendant about the oral agreement and understanding between him and the plaintiff relative to the reconveyance of the real property to him by plaintiff, before or at the time of its conveyance to plaintiff by him, was excluded on the ground that it was an attempt to establish an express trust by parol evidence contrary to the provisions of § 2-905, O. C. L. A. Defendant requested and was granted permission to, and did, take such evidence over the ruling of the court pursuant to § 9-202, O. C. L. A.

Plaintiff contends, among other things, that defendant has pleaded facts showing an express trust in real property and therefore parol evidence, under § 2-905, O. C. L. A., is not admissible to prove such a trust. On the other hand, the defendant asserts that the plaintiff is a trustee ex maleficio for him of an undivided one-half interest in the real property in controversy and that such issue was presented by his counterclaim and established by the evidence taken "under the rule".

The following facts are established by the evidence: Prior to 1929 defendant purchased the real property here involved for $3,000. During the year 1929 he erected thereon a garage building at a cost of $24,000, paid an additional $1,000 for the construction of sidewalks around the property, and installed equipment in the garage at a cost of $5,000. The financing of the

construction of the garage and the purchase of the equipment therein was accomplished by using money from defendant's bank account, money borrowed upon life insurance policies of both plaintiff and defendant, and a loan of $24,000 from a savings and loan association secured by a mortgage upon the property. After its completion and from August, 1929, until October 15, 1933, the garage was operated by defendant. In September, 1933, there being unpaid on the mortgage $24,-594.91, foreclosure proceedings were instituted by the mortgagee. Thereafter on October 2, 1933, plaintiff and defendant entered into a stipulation with the mortgagee wherein it was agreed that "the foreclosure proceedings should remain inactive upon condition that plaintiff and defendant pay the sum of $250.00 per month to the mortgagee" to be applied upon the principal and interest of said mortgage and should also pay the taxes levied and assessed against the property. At about the time this stipulation was entered into defendant leased the property for a period of three years at a rental sufficient to meet the stipulated payment on the mortgage and also to cover the cost of fire insurance and upkeep.

We now quote from the findings of fact which are, in our opinion, supported by the weight of the evidence, and the correctness of which is not seriously questioned by the defendant:

"VIII. That at the time defendant leased this garage and discontinued his operation of it, he was indebteded to various creditors upon open accounts amounting to approximately $2,000.00, and had bills receivable from the operation of this garage amounting to about $1,200.00; that defendant's creditors were pressing him for payment of his indebtedness, and that he was unable to collect his accounts receivable or to pay his indebtedness, and

that his creditors attempted to attach and garnishee the rentals under the lease he had given to this garage property; that had this continued, defendant would have been unable to meet the payments under the stipulation with the mortgagee, and that in order to meet this situation, defendant did on April 21st, 1934, execute and deliver to the plaintiff his warranty deed, conveying said real property and garage to the plaintiff, and that thereafter the plaintiff conducted all the business in connection with the garage without any participation therein by the defendant, and handled said garage property as her own; that defendant secured employment, and that the moneys earned by him in this employment, together with other moneys earned by the plaintiff and the rentals from the garage, and the moneys received from the accounts receivable which defendant owned at the time he discontinued his operation of the garage, were all placed in plaintiff's account, and that plaintiff attended to the collection of these accounts receivable entirely; that from these moneys so placed in plaintiff's bank account, plaintiff paid the payments under the stipulation to the mortgagee, paid all living expenses of the family, which included plaintiff and the adopted daughter and son of plaintiff and defendant, and defendant, whenever he was at home, and also used said moneys from her bank account for the payment of defendant's indebtedness, until the month of April, 1937, at which time the accounts receivable which were due to defendant had been collected, and all the indebtedness of defendant had been paid, and the payments under the stipulation had been paid when and as the same fell due by plaintiff from her said bank account.

"IX. That during the month of April, 1937, defendant discontinued the payment of any moneys to plaintiff and retained his earnings for himself, and continued to do this until sometime in 1938, when defendant went to Bend, Oregon, and established an insurance business, * * * that in 1940,

plaintiff joined defendant at Bend, and that from then until defendant left Bend, Oregon, about the first half of 1945, plaintiff and defendant both contributed to their living expenses, the defendant paying the house rent and the plaintiff paying the greater part of the other living expenses of plaintiff and defendant.

"X. That plaintiff has continued to make the payments to the mortgagee under the stipulation and to pay for the repairs and the insurance upon the garage property at all times since the same was deeded to her by the defendant in April of 1934, but in so doing has been compelled to, and has, borrowed approximately $2,300.00, and that plaintiff is indebted in that amount, but that defendant is not bound to pay any part of it, and that at this time the amount unpaid upon the mortgage has been reduced from $24,594.91, which was unpaid on October 1st, 1933, to $10,571.95, and plaintiff has at all times since April, 1934, handled this garage property as her own individual property and has assumed and discharged all liabilities in connection therewith."

■ The law is well settled in this state that parol evidence is not admissible to establish an express trust. § 2-905, O. C. L. A.; *Howard v. Foskett*, 96 Or. 446, 189 P. 396; *Hornbeck v. Crawford*, 130 Or. 230, 279 P. 870. Section 2-905 is as follows:

"No estate or interest in real property, other than a lease for term not exceeding one year, nor any trust or power concerning such property, can be created, transferred, or declared otherwise than by operation of law, or by a conveyance or other instrument in writing, subscribed by the party creating, transferring, or declaring the same, or by his lawful agent, under written authority, and executed with such formalities as are required by law."

Defendant argues that the foregoing statute of frauds is not applicable to the facts in the instant case

and that the evidence which was introduced by him, under the rule, establishes a constructive trust for his benefit in an undivided one-half interest in the real property. He claims that, because of the confidential relationship existing between him and his wife, he had conveyed the real property to her on her parol promise to reconvey it upon his request and that her violation of such promise constitutes constructive fraud and raises a constructive trust.

The legal proposition upon which the defendant relies is thus stated in 54 Am. Jur., Trusts, § 233, p. 178:

"A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term 'confidence' or 'confidential relationship' liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof. * * * *"

The foregoing text is supported by the following citations: *Brison v. Brison,* 75 Cal. 525, 17 P. 689; *Butler v. Hyland,* 89 Cal. 575, 26 P. 1108; *Taylor v. Bunnell,* 77 Cal. App. 525, 247 P. 240; *Bowler v. Curler,* 21 Nev. 158, 26 P. 226; *Newis v. Topfer,* 121 Iowa 433, 96 N. W. 905. See also *Becker v. Neurath,* 149 Ky. 421, 149 S. W. 857; *Shortridge v. Shortridge,* 207 Ky. 790, 270 S. W. 47; *Meek v. Meek,* 79 Or. 579, 156 P. 250. We shall assume, without deciding, that the principle contended for by defendant is correct.

■ In considering the evidence upon which defendant relies to prove a constructive trust, certain rules should not be overlooked. Parol evidence, to establish either a resulting or constructive trust, is always received with great caution. It must be definite, clear, and convincing, and should be both closely scrutinized and carefully weighed by the courts since its effect is to upset paper titles. Annotations, 23 A. L. R., 1517, 1520 and 1536; 54 Am. Jur., Trusts, § 620, p. 478; *Parker v. Newitt,* 18 Or. 274, 23 P. 246; *Dahl v. Simonsen,* 157 Or. 238, 70 P. (2d) 49; *Neppach v. Norval,* 116 Or. 593, 240 P. 883, 242 P. 605; *Johnston v. McKean,* 177 Or. 556, 572, 162 P. (2d) 820, and authorities therein cited.

■■ Where the husband transfers property to his wife, either directly or through a third person, a gift will be presumed. 41 C. J. S., Husband and Wife, § 153, p. 626; *Dahl v. Simonsen,* supra; *Rhodes v. Peery,* 142 Or. 165, 174 19 P. (2d) 418; *Holohan v. McCarthy,* 130 Or. 577, 587, 281 P. 178. This presumption can be overcome only by clear and convincing evidence. *Holohan v. McCarthy,* supra.

In his counterclaim defendant alleges that because of adverse business conditions he was unable to operate the garage profitably and that on April 21, 1934, he and the plaintiff entered into an agreement under the terms of which it was agreed that he would deed the garage building to the plaintiff so that she could operate it "while the defendant took employment elsewhere, it being understood that the plaintiff should retain title to said premises" until he requested her to deed back to him an undivided one-half interest in the premises. We shall assume that by the foregoing averments the defendant intended to, and did, allege that the plaintiff promised to reconvey to him an un-

divided one-half interest in the real property. But nowhere in his testimony—and in discussing the testimony and exhibits we shall consider the evidence admitted and also that introduced by the defendant under the rule—have we been able to find any statement by defendant that Mrs. Bowns made such a promise. He did testify that "This deed I gave to Mrs. Bowns was as a result of adverse circumstances over which I had no control. * * * On the theory that if I could get out and get a job, Mrs. Bowns could handle the business and carry on there and we could save ourselves by me giving her a deed to this property, that it would give us sufficient time for us to pay our creditors and get out without going into bankruptcy—because I always had a dislike for the name 'bankruptcy', and on that condition, Mrs. Bowns and I discussed this thoroughly before this deed was made."

Later in his testimony defendant stated that "One of the requirements in the issuing of this deed was that Mrs. Bowns was to make me a will or make a will in which, in case of her demise, if she preceded me, then there would be no question as to the ownership of the property." Asked if he had ever made demand upon Mrs. Bowns for the return of this property, he answered: "On several occasions, I asked about the will and she said—the most she would say was 'How do you know I haven't made a will.' I said, 'I don't know that you have. I would like to know.' "

Defendant in his testimony does not specify any particular promise made by the plaintiff on which he relied. Relative to his reliance upon her promise he testified as follows:

"Q. When you made this deed, did you rely upon her promise to you? A. I certainly did.

"Q. And you believe what she told you—that she would do what she had told you? A. Certainly.

"Q. You had confidence in her ability to carry on the business of the garage? A. I had no reason to think otherwise.

"Q. She was a good manager? A. Yes.

"Q. Frugal? A. Very frugal.

"Q. And careful in her business dealings? A. Yes, sir.

"Q. And you relied on that in making this deed? A. I did."

A son, Leon G. Bowns, Jr., was born in June, 1919. He testified that in 1933 or 1934, when he was between 13 and 14 years of age, he had gone upstairs to bed and "was sitting on the top step of the stairway that comes off the kitchen in that house" when he overheard a conversation between his parents, who were somewhere in the dining room, in which his mother agreed to deed a one-half interest in the property back to his father. We do not give much weight to this testimony because of the boy's age and the circumstances under which he claims to have heard the conversation and the period of time elapsing since he heard it. Moreover, he remembered too vividly the details of the alleged conversation, concerning a matter in which he had no special interest, thirteen years after it is supposed to have occurred.

Plaintiff and defendant also had an adopted daughter born in 1920. In 1934, after Mr. Bowns had deeded this property to his wife, he left her with their two children in Baker and found employment as camp superintendent at Crater National Park where he worked until late in October when he returned home.

He stated that he had sent approximately $1,080 to his wife during that period of time. He remained at home until the first of June, 1935, when he was appointed camp superintendent at the C. C. C. camp at Diamond Lake, at a salary of $200 a month. His employment there continued until November 15th of that year and during that time he sent monthly payments to his wife. In February, 1936, he received an appointment in the Bureau of Reclamation at Ontario, Oregon, at a salary of $190 a month and sent his wife about $150 a month, until April, 1937, when he ceased sending her money.

Mr. Bowns moved to Bend, Oregon, in 1938 and established an insurance business. His wife joined him there in 1940. Thereafter both plaintiff and defendant contributed to their living expenses until defendant left Bend in 1945. On April 19, 1941, defendant gave to plaintiff his check for $250 which he testified represented the April payment on the mortgage. This appears to be the first payment of any consequence given by defendant to plaintiff subsequent to April, 1937. Thereafter he paid to plaintiff by check $50 on May 18, 1942, and payments of $25 each in June, July, August, September, and October, 1942. In 1945 the garage was unrented for eight months and plaintiff borrowed approximately $2,300 from her daughter's fiance to make the monthly payments on the mortgage. This loan has not been repaid.

It has been pointed out that the land, the garage building and the equipment cost approximately $33,000 in 1929, of which $5,000 was for the equipment. In 1934, when the defendant gave the plaintiff a deed for the garage property, real estate had greatly depreciated in value and there is evidence that the value of the garage property did not exceed the principal and un-

paid interest on the mortgage, which amounted to about $24,594.91. The excess over $24,000 was for past due interest. At that time defendant's unsecured indebtedness greatly exceeded his other assets. He had bills receivable amounting to about $1,200, which plaintiff collected and applied on his indebtedness. By April, 1937, plaintiff had paid all of defendant's unsecured indebtedness.

■ We have considered all the evidence admitted and that received under the rule relating to the conditions and circumstances of the transfer of this real property by defendant to plaintiff and are of the opinion that it fails to meet the requirements of the rule above stated relative to the establishment by parol evidence of either a constructive or resulting trust. The evidence is not definite, clear and convincing that Mrs. Bowns promised to reconvey the real property or any interest therein to defendant or that he conveyed it to her with that understanding.

■ The reason defendant gave for transferring the real property to his wife was to enable him to find employment elsewhere. He does not attempt to explain why that was necessary or how it would in any way help him to find employment. It is more probable that he conveyed the property to his wife to place it beyond the reach of his unsecured creditors, and if that were the fact he would have no standing in a court of equity to regain the same. *Hornbeck v. Crawford,* supra; *Jolly v. Graham,* 222 Ill. 550, 78 N. E. 919, 113 Am. St. Rep. 435. There is also the presumption that this conveyance was a gift from the husband to his wife, whom he was legally required to support. This presumption has not been overcome by clear and convincing evidence.

Defendant's conduct toward this property, and the management thereof, has not been that of a person who owned it or had a substantial interest in it. The money which he sent to his wife when employed by the government, after the execution of the deed and up to April, 1937, was not any more than sufficient for the maintenance and support of his wife and two children. From April, 1937, until 1940, when Mrs. Bowns moved to Bend, he apparently did not send her any money whatsoever. Through her own efforts Mrs. Bowns, up to the time of the trial, had reduced the mortgage on the garage property to $10,571.94. Now that the property has a substantial value over and above the lien of the mortgage defendant is asserting an interest therein. After a careful consideration of the entire record we are of the opinion that defendant has failed to establish any interest in the real property and that the Circuit Court did not err in decreeing that plaintiff is the owner of such property.

The decree of the lower court also declared the plaintiff to be the owner of all the equipment in the garage. Defendant in his counterclaim alleges that he is the owner of all that equipment. He testified as follows:

"Q. And what about the equipment—was there any equipment put in the garage? * * * A. It amounted to about $5,000.

"Q. And what did that consist of? A. Everything to run a general garage. I did not have complete shop equipment. I had some shop equipment, but not a complete shop; I wasn't completely equipped for shop work, but otherwise it was completely equipped."

■ The foregoing is the only testimony about the equipment. Plaintiff in her brief states that "there is

no evidence whatever as to what personal property is involved, where it is located, what is its present market value or anything along that line.'' There is not sufficient evidence in the record on which the court can make a determination as to the ownership of this equipment. Therefore the decree is modified by eliminating therefrom the reference therein as to the ownership of the equipment on the real property.

With this modification the decree appealed from is affirmed. Plaintiff is to recover her costs and disbursements in this court.