CARLISLE B. ROBERTS, Judge.
 

 Plaintiffs, Robert N. and Sandra Rose, husband and wife, appealed from defendant’s Order No. G-78-1,
 
 *[230]
 
 dated November 24, 1978. The order determined that the plaintiffs’ 1974 transfer to each of Robert’s sisters, Margaret and Judy, of a one-third undivided interest in real property was an inter vivos gift taxable by the State of Oregon pursuant to ORS 119.010. The plaintiffs alleged that the property was being held in trust for the benefit of Robert, Margaret, and Judy and, therefore, the transfer was not a taxable gift.
 

 Robert’s father died in 1963 and his mother was killed in an automobile accident some nine months later. Robert and his two sisters inherited real property containing approximately 680 acres of unimproved land on which some timber was growing, three other parcels of land totaling approximately 23 acres, and miscellaneous personal property.
 

 On June 12, 1965, Margaret and Judy executed a deed, each transferring her undivided one-third interest in the subject property to Robert. The Inheritance and Gift Tax Division of the Department of Revenue, State of Oregon, upon learning of the transaction, prepared gift tax returns which were signed by the sisters and paid by Robert.
 

 Nine months later, on March 29, 1966, Robert conveyed an undivided one-half interest in the subject property to his wife, one of the plaintiffs herein. At the same time, both plaintiffs had wills drafted naming their children as heirs and Robert’s sister, Margaret, as executrix.
 

 The death of Robert’s parents caused him, the youngest child, extreme emotional distress. His condition worsened until, in May 1970, he was committed by court order to the State Hospital for two to three years. Robert spent approximately one month in the hospital and, at the time of trial, was still being treated for his nervous condition on an out-patient basis.
 

 On April 10, 1974, Robert and Sandra reconveyed the subject property to Robert and his sisters as tenants in common, each having an undivided one-third
 
 *[231]
 
 interest. At the same time, Robert, Margaret and Judy reduced to writing what they allege was their original agreement and understanding respecting their individual interests in the real property. They contend that before the 1965 transfer of the property by Margaret and Judy to Robert, and at all times thereafter, they have had an agreement that Robert was to hold and manage the inherited property in trust for the benefit of all three heirs. Robert testified that he understood that the transfer by deed was the best way to carry out their intentions and his sisters did not question his conclusion. The sisters confirmed this testimony.
 

 In December 1974, Robert exchanged substantially all of his interest in the merchantable timber (described as all timber with 12" dbh or greater) on the 680-acre tract of land for his sisters’ undivided two-thirds interest in the same property exclusive of the merchantable timber. Robert is now the sole owner of the 680-acre tract and his sisters paid the income tax resulting from this transaction.
 

 The timber on the 680-acre tract was sold in January 1975, for $210,000, with Robert receiving $10,000 and each sister receiving $100,000.
 

 The Department of Revenue ruled that the transfer of the subject property on April 10,1974, from the plaintiffs to Robert and his sisters was a gift. The department has asserted a gift tax of $8,258 plus interest against Robert and a gift tax of $19,398 plus interest against Sandra.
 

 Plaintiffs denied that the April 1974 transfer was a gift, claiming that all the parties involved understood and were in complete agreement that Robert held the inherited property in trust for the benefit of all three heirs.
 

 The defendant argued that the 1965 bargain and sale deed transferring the subject property to Robert indicated an intent to transfer the property to him
 
 *[232]
 
 without restrictions or conditions. No trust agreement was drafted. Although Margaret and Judy testified that they did not understand why they should file gift tax returns, neither attempted to question Robert or the attorney who drew up the deed regarding the implication of a gift to Robert. The instructions given by Robert to the attorney have not been made clear to the court.
 

 Defendant pointed out that less than a year after the transfer to Robert, he conveyed a one-half interest to Sandra and both plaintiffs drafted wills leaving the subject property to their children. Neither sister objected to these actions. As above stated, Margaret was named as personal representative in the wills.
 

 In 1974, on advice of counsel, Robert and his sisters reduced to writing their agreement regarding an oral expressed trust, claiming this agreement had been understood by all since a time prior to the original transfer to Robert from Margaret and Judy in 1965.
 

 Defendant contended that the alleged oral trust was a vaguely defined agreement and that the objective evidence surrounding the original conveyance of interest by the sisters refuted the conclusion that a trust existed. Defendant argued that if Robert had understood this trust agreement he would have explained it to his attorney so that the proper legal instrument could have been drafted instead of the deed transferring the sisters’ interest to Robert without condition. The defendant pointed out that the sisters made no inquiries regarding the implication of the gift tax returns they signed, no offer to share expenses of maintaining the property, no protest when Robert transferred title to himself and Sandra and no objection when the plaintiffs drew up wills leaving the property to their children with no mention of a trust.
 

 Plaintiffs presented evidence that the death of Robert’s parents caused Robert extreme emotional distress. The possibility of dividing or selling the 680-acre
 
 *[233]
 
 parcel which had originally belonged to his grandfather aggravated Robert’s emotional condition. Therefore, Robert and his sisters agreed that this 680-acre tract should not be liquidated but should be retained in the family if at all possible.
 

 Plaintiff and his sisters testified that when the sisters conveyed their undivided one-third interest to Robert, it was pursuant to an agreement that Robert would hold the property for the benefit of all three owners. In addition, they testified that at all times it was understood that Robert would eventually purchase the interests of his sisters for a reasonable value or, if he were unable to purchase the other two-thirds interest, the property would be sold and the proceeds divided evenly between the three heirs. On direct examination, Judy testified: "* * * [I]t would be split three ways * *
 

 When cross-examined concerning the price Robert was to pay for the subject property, Judy testified: "Well, when the time came, I’m sure it would have been a fair price for the — the property. I wasn’t worried about it.”
 

 Margaret was cross-examined concerning Robert’s conveyance of one-half interest to his wife and she answered: "* * * [I]f something should have happened to Bob, Sandra would see that it was done right. * * *”
 

 When Sandra was asked if she intended to make a gift when she deeded the subject property back to Judy and Margaret in 1974, she answered: "No. * * * [I]t wasn’t mine to give.”
 

 Defendant contended that the objective facts refute the existence of a trust and cited
 
 Bowns v. Bowns,
 
 184 Or 603, 200 P2d 586 (1948), as support for its contention that plaintiffs’ proof must be clear and convincing.
 

 This court agrees that parol evidence establishing a resulting trust is to be received with great
 
 *[234]
 
 caution. Such evidence must be clear and convincing.
 
 Bowns, supra,
 
 and
 
 Albino v. Albino,
 
 279 Or 537, 568 P2d 1344 (1977).
 

 ORS 41.740, the parol evidence rule, states that when the terms of an agreement have been reduced to writing by all the parties, there can be no evidence of the terms of agreement other than its contents. However, this section does not exclude other evidence of the circumstances under which the agreement was made. ORS 42.220 explains that:
 

 "In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language he is interpreting.”
 

 Exceptions to the parol evidence rule have been repeatedly recognized by the Oregon Supreme Court and
 
 Hatley v. Stafford,
 
 284 Or 523, 588 P2d 603 (1978), detailed several of those exceptions. One exception noted was a recital of a decision found in
 
 Nat. Cash Reg. Co. v. I.M.C., Inc.,
 
 260 Or 504, 491 P2d 211 (1971), where it was held that there is no application of the parol evidence rule when the parties don’t intend their writing to be a final statement of their agreement. The court also reiterated the position it took in
 
 Blehm v. Ringering,
 
 260 Or 46, 50, 488 P2d 798, 800 (1971), by repeating, "[T]he surrounding circumstances, as well as the written contract, may be considered. * * *” An express oral trust of land will be enforced where the grantee (in this case, Robert) fails to raise the Statute of Frauds as a defense.
 
 Berean Fundamental Church Council v. Braun,
 
 281 Or 661, 576 P2d 361 (1978);
 
 Belton v. Buesing,
 
 240 Or 399, 402 P2d 98 (1965).
 

 In the instant case, "the surrounding circumstances” reveal that this was not a sophisticated business transaction. At the trial, the witnesses, other than the plaintiffs, were excluded from the courtroom except when testifying. All the witnesses impressed the court by their candor and understanding. Robert’s
 
 *[235]
 
 two sisters proved themselves to be mature and sensible. Parol evidence is clear and convincing that Robert, Sandra, Margaret, and Judy were a close-knit, trusting family unit. They knew what they wished to accomplish. Their naivete regarding legal and business affairs led them to believe their attorney understood their aims (as conveyed by Robert) and they blindly followed his instructions without question and, it would appear, without understanding the legal ramifications.
 

 The evidence is deemed clear and convincing that at all times it was understood that Robert and, later, Robert and Sandra, held the subject property in trust for Margaret, Judy and Robert. None of the parties believed nor intended that any transfer of the subject property was in the nature of a gift. Robert, Margaret and Judy consistently believed that each owned a one-third interest in the subject property throughout the nine years involved.
 

 The court finds that no gift was contemplated nor accomplished through plaintiffs’ 1974 transfer of the subject property but that said property was held in trust by the plaintiffs for the benefit of Margaret, Judy and Robert. Therefore, defendant’s Order No. G-78-1 is set aside.
 

 As defendant has properly pointed out, cases such as this place a great responsibility upon the trier of fact and he should be moved only by clear and convincing evidence, in order to obviate tax evasion. While such evidence was presented in this case, the tax administrator was entitled, ab initio, to rely on the several legal documents filed by the plaintiffs and the other heirs, and the expense of a trial was required to resolve the issue. In the circumstances, although plaintiffs have been awarded a favorable decision, no costs will be allowed.